**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| ANTHONY CRAIG WEST, | Case No. 2:21-cv-10225 |
| *Plaintiff,* | Nancy G. Edmunds<br>United States District Judge |
| v. | Patricia T. Morris<br>United States Magistrate Judge |
| ROSLYN JINDALL,<br>and HENRY FENRICK, | |
| *Defendants.* | |

<u>**ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION
(ECF No. 136) IN PART AND DENYING PLAINTIFF'S MOTION FOR
APPOINTMENT OF COUNSEL (ECF No. 135)**</u>

### I. Background and Introduction

This is a prisoner civil-rights action under 42 U.S.C. § 1983. Anthony West is a state prisoner who alleges that various state officials violated his Eighth Amendment protection against cruel and unusual punishment by failing to supply prescribed pain medication following a surgical tooth extraction. (ECF No. 1, PageID.4). In response to Defendant Jindal's motion for summary judgment, West claimed that when he returned to prison after his surgery, he watched a transportation officer hand his prescription to a Nurse, Emmy Choge. (ECF No. 94-2, PageID.790–92). West later learned from Choge's medical notes and her response to an

1

interrogatory that she left his prescription "on the provider's desk." (ECF No. 100-4, PageID.992; ECF No. 100-6, PageID.1015). And in response to West's interrogatory, Choge clarified that while the prison employs several medical providers, the "provider" she referred to "would have been" Defendant Roslyn Jindal. (ECF No. 100-6, PageID.1015).

Choge, however, admitted that she had no personal "recollection" of West's claims, and stated that she "relie[d] on" West's "medical record to respond" to his interrogatory. (*Id.*) But neither Choge's own notes nor any of the medical records submitted alongside the Defendants' summary judgment motions contained any such information. (ECF No. 112, PageID.1322–24). Thus, the Undersigned concluded that because West could point to nothing other than Choge's speculation to prove that she left the prescription on Jindal's desk, he could not genuinely dispute whether she, and not some other medical provider, received his prescription. (*Id.*) And for that reason, I recommended that the Court grant summary judgment in favor of Jindal. (*Id.*)

The District Judge disagreed. In the Court's view, the issue of whether the foundation of Choge's statement that Jindal was the provider on duty was a factual question to be resolved at trial. (ECF No. 124, PageID.1454). And so the Court rejected the Undersigned's recommendation and denied summary judgment in favor of Jindal. (*Id.*)

While her summary judgment motion was pending, Jindal retained new counsel. (ECF No. 123). While helping Jindal prepare for a settlement conference earlier this year, her new attorneys "learned for the first time that Ms. Jindal did not work" on the day West returned from the hospital. (ECF No. 130, PageID.1486, ¶¶ 10–11). They also learned that Jindal "could obtain time sheets showing this." (*Id.* at PageID.1486, ¶ 11). Sometime later, Jindal procured timesheets stating not only that she did not clock-in to work on the day West returned from the hospital, but that she did not return to work until four days later. (*Id.* at PageID.1486, ¶ 12; *see also* ECF No. 130-1). Jindal's former attorneys did not have this document when they moved for summary judgment, and it is unclear whether they consulted with Jindal before filing their motion. (ECF No. 130, PageID.1486–87, ¶¶ 12–13).

Jindal moved for leave to file a second summary judgment motion that reflected this new evidence on February 9. (*Id.* at PageID.130). Under this District's Local Rules, West's response was due by February 23, and on February 27, having received no response from West, the Undersigned granted Jindal leave to file a second motion for summary judgment. (ECF No. 132); *see* E.D. Mich. LR 7.1(e)(1)(A).

Yet later that day, the Clerk's Office received West's response brief and uploaded it to the Court's docket. (ECF No. 133). And the following day, the Clerk's Office uploaded a second response brief (ECF No. 134) and a motion for

appointment of pro bono counsel (ECF No. 135)—both of which the Clerk's Office had received the day prior. A few weeks later, West moved the Court to reconsider its order granting Jindal leave to file a second motion for summary judgment to account for the arguments raised in his response briefs. (ECF No. 136). In his motion, West attached excerpts from both response briefs in addition to a document indicating that he had submitted his response brief to prison officials for mailing one day before it was due. (*Id.* at PageID.1590–91

## II. Analysis

### A. Motion for Reconsideration

The Undersigned has reevaluated her prior Order to take West's briefing into consideration. Even so, West fails to convince the Undersigned to rescind Jindal's leave to file a second summary judgment motion.

As explained in the previous Order, the Court has discretion to allow parties to file multiple summary judgment motions. *Lexicon, Inc. v. Safeco Ins. Co. of America Inc.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006); s*ee SEC v. Battenberg*, No. 06-14891, 2010 WL 1494766, at *2 n.3 (E.D. Mich. Apr. 14, 2010). Yet to discourage "piecemeal litigation at the summary-judgment stage," courts will generally only allow parties to file more than one summary judgment motion for "good reasons," such as: "'(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; [or] (3) need to correct a clear error or

4

prevent manifest injustice.'" *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995); *see also Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1021 (S.D. Ohio 2007); *Hudson v. City of Highland Park*, No. 2:16-cv-12369, 2020 WL 12676309, at *1 (E.D. Mich. Jan. 16, 2020).

Further, allowing Jindal to file her second motion for summary judgment would also require the Court to modify its scheduling order. Under Federal Rule of Civil Procedure 16(b)(4), a Court may modify its scheduling order only for "good cause." What constitutes "good cause" for modification of a scheduling order, however, varies from case to case. 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.2 & n.4 (3d ed. 2023). To assess whether a party has presented "good cause" for modifying the scheduling order, courts consider several factors, including (1) "the moving party's diligence in attempting to meet the case management order's requirements," (2) "the importance of the [modification]," and (3) the prejudicial impact of the modification on the nonmoving parties. *Springboards To Education, Inc. v. Houston Ind. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019) (internal quotation marks omitted); *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (listing the movant's diligence and the prejudicial impact on the nonmovants as examples of relevant factors); *see Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford*, 249 F.3d at 809)).

5

West asks the Court to deny Jindal's motion for leave primarily on the basis that Jindal did not show that she acted diligently in securing her time sheet. (ECF No. 134, PageID.1524–25). Indeed, Jindal did not obtain her time sheet until over a year after the dispositive motion deadline, and her motion does not explain why she did not discover this evidence sooner. (ECF No. 85, PageID.660; ECF No. 130, PageID.1502–03, 1506 & n.1).

To be sure, a movant's failure to adequately explain why it could not comply with a scheduling order's deadline despite its reasonably diligent efforts if often a fatal defect. The Sixth Circuit describes the movant's diligence in attempting to meet a deadline as the "primary factor" in determining whether good cause exists for modification. *Inge*, 281 F.3d at 625. Indeed, courts often need look no further than this factor to determine the presence or absence of good cause. A movant's inability to meet a deadline despite diligent efforts to do so is often a sufficient basis to find good cause for modification. *See* Fed. R. Civ. P. 16 advisory committee's note to the 1983 amendments. And in some circumstances, such as where a party files an untimely motion to amend its pleadings, courts can "only" find good cause if the movant could not meet the deadline through reasonable diligence. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020); *see also Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003).

6

Much of the Sixth Circuit's precedent on Rule 16(b)(4)'s "good cause" standard discusses motions to modify a scheduling order's deadline for amending pleadings. *E.g.*, Leary, 349 F.3d at 907; *Inge*, 281 F.3d at 625. And in that unique context, there are good reasons for a movant's diligence to be a prerequisite for modification of a scheduling order's deadline. Rule 16 is designed as the "essential mechanism for cases" to become "trial-ready in an efficient, just[,] and certain manner." *Rouse v. Farmers State Bank*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir.1992). To that end, firm deadlines for the amendment of pleadings "ensure[] that at some point both the parties and the pleadings will be fixed." *Nat'l Prescription Opiate Litig.*, 956 F.3d at 843. Late and unexpected changes to the claims and parties in a case create a moving target that frustrates the Court's ability to bring the matter to trial in an efficient and certain manner. *See Johnson*, 975 F.2d at 610. Further, consideration of the movant's inability to meet the scheduling order's deadline for the amendment of pleadings is necessary to differentiate Rule 16's good cause standard from the more lenient standard applied to timely motions under Rule 15(a)(2). *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Yet outside of this context, the movant's diligence is just one of several factors used to assess the presence of good cause. *See Inge*, 281 F.3d at 625; *Bradford*, 249

7

F.3d at 809. A motion for modification of a scheduling order to file an otherwise tardy summary judgment motion does not implicate the same pragmatic concerns that require diligence when a party seeks additional time to amend its pleadings. While an untimely amendment to the pleadings may frustrate judicial economy and orderly case management, an untimely summary judgment motion often may have the opposite effect. Even a late summary judgment motion may narrow the issues for trial, allowing both the parties and the Court to avoid unnecessary costs inherent in conducting and preparing for trial. *Israfil v. Woods*, No. 1:09-cv-468, 2015 WL 13621043, at *3 (S.D. Ohio May 8, 2015); *Ortiz v. Karnes*, No. 2:06-cv-562, 2010 WL 2991501, at *2 (S.D. Ohio July 26, 2010).

And unlike proposed amendments to the pleadings, the issues that arise in tardy summary judgment motions do not disappear if the court disallows modifications to its scheduling order. *Elec. Data Sys., LLC v. Syncreon America, Inc.*, No. 09-13660, 2012 WL 13005379, at *3 (E.D. Mich. Oct. 2, 2012). Whether it be on a motion in liminie, on a motion for a directed verdict, or in closing arguments at trial—the nonmovant will eventually need to confront whatever issues would have been addressed in the proposed summary judgment motion. *Id.* So at least where the proposed motion appears meritorious and the movant does not seek summary judgment on the eve of trial, disallowing a summary judgment motion only kicks the can down the road. *Id.*; *see Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d

8

125, 130 (2d Cir. 1999) ("It is axiomatic that the purpose of summary judgment is to prevent trials that are unnecessary.")

For those reasons, several district courts in this circuit have excused movants' lack of diligence when allowing an untimely summary judgment motion would be in the interest of judicial economy. *E.g.*, *Israfil*, 2015 WL 13621043, at *3; *Espey v. Spectrum Health Sys., Inc.*, No. 1:09-0090, 2011 WL 2516638, at *5 (M.D. Tenn. June 23, 2011); *Ortiz*, 2010 WL 2991501, at *2; *see Elec. Data Sys., LLC*, 2012 WL 13005379, at *3.

So too, the Sixth Circuit has not stringently applied Rule 16(b)(4)'s in the few cases where it has addressed modifications to a district court's dispositive motion deadline. In *Andretti v. Borla Performance Indus., Inc.*, for example, the Court upheld an order denying a motion to strike an untimely summary judgment motion not only by assessing the movant's diligence, but also the prejudicial impact on the nonmovant and the importance of the issues raised in the motion. 426 F.3d 824, 829–30 (6th Cir. 2005). Had the movant's inability to meet the deadline despite its diligence been dispositive, then the Court need not have discussed any other factors. *See id.* And although the Sixth Circuit had no occasion to decide whether any lack of diligence would have stripped the district court of discretion to modify its scheduling order, nothing in the opinion suggested that the Court viewed the movant's diligence as prerequisite for modification of the scheduling order. *See id.*;

9

*see also Davis v. Detroit Police & Fire Pension Sys.*, No. 16-1748, 2017 WL 11776329, at *2 (6th Cir. Apr. 6, 2017) (upholding an order extending a summary judgment deadline despite the movant's "lack of diligence").

Thus, while I share West's frustration in Jindal's failure to obtain her timecard before filing her initial summary judgment motion, I find that the Court's interest in judicial economy warrants modification of the scheduling order. The Court has not yet scheduled a date for trial, and granting summary judgment in Jindal's favor could spare both the parties and this Court from the time and expenses required to prepare for and conduct a trial. *See Espey*, 2011 WL 2516638, at *5. And even if the Court again denied summary judgment in Jindal's favor, this might encourage the parties to reach a settlement. *See Elec. Data Sys., LLC*, 2012 WL 13005379, at *3.

Further, regardless of whether Jindal renews her summary judgment motion, West will eventually need to confront this evidence. *See id.* And for that reason, I find that granting Jindal's motion to modify the scheduling order would cause no prejudice beyond the inconvenience inherent in responding to a dispositive motion. *See Andretti*, 426 F.3d at 830 ("There is no indication of prejudice, however, because there is no indication that the outcome of the motion would have been different had [the movant] filed it before the deadline.") Again, if West believes that he requires additional discovery to respond to this new evidence, he remains free to move the Court to reopen discovery upon receipt of Jindal's summary judgment motion. (ECF

10

No. 130, PageID.1504–05 (stating that Jindal would be "amenable" to reopening discovery)). Likewise, if West believes there to be authentication issues with Jindal's timesheet (ECF No. 134, PageID.1527–28) he remains free to raise those issues at the appropriate time.

For these reasons, West's Motion for Reconsideration is granted only to the extent that he asks the Court to reevaluate Jindal's motion to modify the scheduling order.

### B. Motion for Appointment of Counsel

Although federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to "request an attorney to represent any person unable to afford counsel," there is no constitutional right to court-appointed counsel in a civil case. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir. 1995). The decision rests in the district court's discretion and will be overturned only if it impinges fundamental due process rights and amounts to an abuse of discretion. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992); *see also Richmond v. Settles*, 450 F. App'x 448, 452 (6th Cir. 2011).

The appointment of counsel is only justified by exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). In determining whether exceptional circumstances are present, the court must consider the "nature of the case," the complexity of the factual and legal issues involved, and the plaintiffs'

11

ability to represent themselves. *Id.* at 606; *see also Shavers v. Bergh*, 516 F. App'x 568, 571 (6th Cir. 2013); *Garrison v. Michigan Dep't of Corrections*, 333 F. App'x 914, 917–18 (6th Cir. 2009). The complexity of the case and the plaintiffs' ability to handle it are "separate and distinct considerations." *Kensu v. Rapelje*, No. 12-11877, 2014 WL 585328, at *2 (E.D. Mich. Feb. 14, 2014). For example, plaintiffs' prior *pro se* experience is relevant to their ability to manage their current cases. *Id.* Courts may decline to appoint counsel where a case has not progressed far enough to assess its merits. *See, e.g.*, *Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (upholding denial where the magistrate judge thought "it was too early to assess the merits of the claim"). Nonetheless, a plaintiff "is not entitled to the appointment of counsel merely because his case may proceed to trial." *Gresham v. Granholm*, No. 2:09-cv-231, 2012 WL 3126781, at *5 (W.D. Mich. July 31, 2012) (citing *Lince v. Youngert*, 136 F. App'x 779, 782–83 (6th Cir. 2005)); *see also Zibbell v. Marquette Cnty. Res. Mgmt.*, No. 2:12-cv-302, 2013 WL 625062, at *13 (W.D. Mich. Feb. 20, 2013) (noting that the procedural posture of case is a consideration).

At this time, Defendant Fenrick has asked the District Judge to reconsider her order denying his summary judgment motion, and Defendant Jindal is expected to renew her motion for summary judgment. (ECF Nos. 128, 130). Until these motions have been decided, I do not find the appointment of counsel to be necessary.

12

Especially in light of the fact that the Court did grant a previous motion for counsel, but no attorney was willing to take his case. Therefore, until the potential motions are resolved, the Court will deny Plaintiff's motion without prejudice.

### III. Conclusion

For these reasons, West's motion for reconsideration (ECF No. 136) is **GRANTED IN PART**, and West's motion for appointment of counsel (ECF No. 135) is **DENIED WITHOUT PREJUDICE**.

Date:  March 22, 2024                                  s/ PATRICIA T. MORRIS
                                                       Patricia T. Morris
                                                       United States Magistrate Judge